Aaron F. Olsen (SBN 224947)
E-Mail: aolsen@fisherphillips.com
Julia F. Drury (SBN 340767)
E-Mail: jdrury@fisherphillips.com
**FISHER & PHILLIPS LLP**
4747 Executive Drive, Suite 1000
San Diego, California 92121
Telephone: (858) 597-9600
Facsimile: (858) 597-9601

Attorneys for Defendant,
INTERNATIONAL PAPER COMPANY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ENRIQUE A. PEREZ, as an individual and on behalf of all others similarly situated,

Plaintiff,

v.

INTERNATIONAL PAPER COMPANY, a New York corporation; and DOES 1 through 100, inclusive,

Defendants.

CASE NO.

*[Removed from Los Angeles Superior Court; Case No. 26STCV20991]*

**DEFENDANT INTERNATIONAL PAPER COMPANY'S NOTICE AND PETITION OF REMOVAL OF ACTION**

Complaint Filed: June 30, 2026
Trial Date: Not Set

# TABLE OF CONTENTS

**PAGE(S)**


I. BACKGROUND ... 1
II. REMOVAL IS TIMELY ... 2
III. VENUE IS PROPER ... 2
IV. REMOVAL IS PROPER UNDER CAFA ... 2
- A. Minimal Diversity Exists ... 3
  - 1. Plaintiff is a Citizen of California ... 3
  - 2. IP is a Citizen of New York and Tennessee ... 3
- B. The Putative Class Contains More than 100 Members ... 4
- C. The Amount in Controversy Exceeds $5,000,000 ... 6
- D. The Named Defendant is Not a Government Entity ... 10

V. BASIS FOR FEDERAL QUESTION JURISDICTION UNDER THE LABOR MANAGEMENT RELATIONS ACT ... 10
VI. SUPPLEMENTAL JURISDICTION ... 12
VII. NOTICE PROVIDED TO STATE COURT AND PLAINTIFF ... 13
VIII. CONCLUSION ... 14

# TABLE OF AUTHORITIES

**PAGE(S)**

**Federal Cases**


*Cain v. Hartford Life & Acc. Ins.*,
890 F. Supp. 2d 1246 (C.D. Cal. 2012) ........ 6

*Cramer v. Consolidated Freightways, Inc.*,
255 F.3d 683 (9th Cir. 2001) ........ 10

*Curtis v. Irwin Industries, Inc.*,
913 F.3d 1146 (2019) ........ 12

*Dart Cherokee Basin Operating Co. v. Owens*,
135 S. Ct. 547 (2014) ........ 6

*Giannini v. Northwestern Mut. Life Ins. Co.*,
2012 WL 1535196 (N.D. Cal. Apr. 30, 2012) ........ 9, 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........ 9

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) ........ 4

*Ibarra v. Manheim Invs., Inc.*,
775 F.3d 1193 (9th Cir. 2015) ........ 6

*Kantor v. Wellesley Galleries, Ltd.*,
704 F.2d 1088 (9th Cir. 1983) ........ 3

*Kobold v. Good Samaritan Reg'l Med. Ctr.*,
832 F.3d 1024 (9th Cir. 2016) ........ 11

*Lee v. BMW of N. Am., LLC*,
2019 WL 6838911 (C.D. Cal. Dec. 16, 2019) ........ 3

*Missouri State Life Ins. Co. v. Jones*,
290 U.S. 199 (1933) ........ 9

*Polizzi v. Cowles Magazines, Inc.*,
345 U.S. 663 (1953) ........ 2

*Ramirez v. Fox Television Station, Inc.*,
998 F.2d 743 (9th Cir. 1993) ........ 10

*Sea-Land Serv., Inc. v. Lozen Int'l*, 285 F.3d 808 (9th Cir. 2002) .... 13

*Serrano v. 180 Connect, Inc.*, 478 F.3d 1018 (9th Cir. 2007) .... 3

*Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053 (9th Cir. 2019) .... 13

*State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514 (10th Cir.1994) .... 3

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) .... 13

*Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993 (9th Cir. 1987) .... 12

**Federal Statutes**

28 U.S.C. § 84(c)(2) .... 2

28 U.S.C. § 1331 .... 10

28 U.S.C. § 1332 .... 1

28 U.S.C. § 1332(d) .... 2, 14

28 U.S.C. § 1332(d)(2)(A) .... 3

28 U.S.C. § 1367(a) .... 12, 13, 14

28 U.S.C. § 1441 .... 1, 10, 14

28 U.S.C. § 1441(a) .... 2, 3

28 U.S.C. § 1441(c) .... 12, 14

28 U.S.C. § 1446 .... *passim*

28 U.S.C § 1446(a) .... 1

28 U.S.C. § 1446(d) .... 13

28 U.S.C. § 1453 .... 3, 14

29 U.S.C. §§ 141-187 .... 10

29 U.S.C. §§ 151-169 .................... 1, 10, 14

29 U.S.C. § 185.................... 1, 10, 14

Class Action Fairness Act.................... *passim*

Labor Management Relations Act.................... 10, 11, 12

**State Statutes**

Cal. Code Civ. Proc., § 340 .................... 8

Cal. Lab. Code, § 218.5 .................... 9

Cal. Lab. Code, § 226 .................... 6, 8, 9

Cal. Lab. Code, § 226(e)(1) .................... 9

Cal. Lab. Code, § 514 .................... 12

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF ENRIQUE A. PEREZ, AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant INTERNATIONAL PAPER COMPANY ("Defendant" or "IP") hereby removes the above-entitled action of Plaintiff Enrique A. Perez ("Plaintiff") from the Superior Court of California, County of Los Angeles to the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 1332, 1367, 1441, 1446, 1453, and 29 U.S.C. §§ 185 et seq.; and 29 U.S.C. §§ 151-169. This Notice of Removal is supported by the accompanying Declarations of Aaron F. Olsen and Cissy Braslow, and the supporting exhibits filed concurrently herewith.

## I. BACKGROUND

1. On or about June 30, 2026, Plaintiff Enrique Perez filed a Class Action Complaint against IP in the Superior Court of the State of California, County of Los Angeles, entitled ENRIQUE A. PEREZ, as an individual and on behalf of all others similarly situated vs. INTERNATIONAL PAPER COMPANY, a New York Corporation; and DOES 1 through 100, inclusive, Case No. 26STCV20991 (the "Complaint"). Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Complaint is attached to this notice as **Exhibit A**. The allegations of the Complaint are incorporated by reference in this Notice of Removal without admission of or agreement to the truth of any of them.

2. The Complaint alleges causes of action under the California Labor Code and Business and Professions Code for: (1) Failure to Pay All Overtime Wages, (2) Minimum Wage Violations, (3) Meal Period Violations, (4) Failure to Authorize and Permit Rest Periods, (5) Failure to Reimburse Necessary Business Expenditures, (6) Wage Statement Violations, and (7) Unfair Competition.

3. IP did not answer Plaintiff's Complaint prior to removal.

/ / /

## II. REMOVAL IS TIMELY

4. IP's registered agent for service of process was personally served with the Complaint (**Exhibit A**), Summons, Civil Case Cover Sheet, Notice of Case Assignment, Initial Status Conference Order, July 10, 2026 Minute Order, Alternative Dispute Resolution Package, and Voluntary Efficient Litigation Stipulations, May 11, 2011 Order Pursuant to CCP 1054(a), Plaintiff's Notice of Posting Jury Fees, which are attached as **Exhibit B**, on July 23, 2026. Declaration of Aaron F. Olsen ("Olsen Decl.) ¶ 3; Declaration of Cissy Braslow ("Braslow Decl.") ¶ 8. Accordingly, this removal is timely under 28 U.S.C. § 1446.

## III. VENUE IS PROPER

5. Pursuant to 28 U.S.C. section 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666 (1953) (holding the venue of a removed action is governed by 28 U.S.C. section 1441(a) and is properly laid in the district embracing the place where the action is pending).

6. This Court (the Central District of California) embraces the Los Angeles County Superior Court, which is where Plaintiff's Complaint was originally filed and where the action is currently pending. 28 U.S.C. § 84(c)(2). Accordingly, this Court is the appropriate federal district court to which to remove this action.

## IV. REMOVAL IS PROPER UNDER CAFA

7. The CAFA, codified in 28 U.S.C. § 1332(d), provides this Court with original jurisdiction over this action. As set forth below, this action is removable pursuant to 28 U.S.C. § 1441(a), as it is a putative class action in which at least one member of the class of plaintiffs is a citizen of a state different from that of any one

defendant, the proposed class exceeds 100 members, and the amount in controversy, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2)(A).

**A. Minimal Diversity Exists**

8. The CAFA requires only minimal diversity—that is that any one plaintiff is a citizen of a different state than any one defendant. *See* 28 U.S.C. §§ 1332(d)(2)(A) and 1453.[1]

9. Minimal diversity exists here, as Plaintiff and IP are citizens of different states.

*1. Plaintiff is a Citizen of California*

10. Upon information and belief, Plaintiff is a resident of California. *See* Braslow Decl. ¶ 3; *see also,* Compl. ¶ 3 (alleging at all relevant times Plaintiff was and currently is a California resident living in the County of Los Angeles). IP's records reflect that Plaintiff's residence is located in Los Angeles County, California. Braslow Decl., ¶ 3. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is prima facie evidence of domicile. *See State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir.1994); see also *Lee v. BMW of N. Am., LLC*, No. SACV1901722JVSADSX, 2019 WL 6838911, at *2 (C.D. Cal. Dec. 16, 2019) ("[A] person's residence is prima facie evidence of domicile and citizenship. Accordingly, because Plaintiffs' residence in La Habra, California is prima facie evidence of their California citizenship and Plaintiffs have not indicated otherwise, complete diversity exists."). Therefore, IP alleges that Plaintiff is a citizen of California.

*2. IP is a Citizen of New York and Tennessee*

11. IP is a citizen of New York and Tennessee because IP is incorporated

[1] The citizenship of Doe defendants is immaterial for purposes of determining minimal diversity under CAFA. 28 U.S.C. § 1441(a); *see Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).

in New York and has its principal place of business in Memphis, Tennessee. *See* Braslow Decl. ¶ 5.

12. A corporation's "principal place of business" "refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). A corporation may only have a singular "principal place of business," which is the corporation's "nerve center." *Id.* at 81, 93. "[I]n practice [this] should normally be the place where the corporation maintains its headquarters." *Id.* at 93.

13. IP maintains its corporate headquarters in Memphis, Tennessee. Braslow Decl. ¶ 5. High-level officers of IP work, direct, control, and coordinate activities of IP out of Tennessee. *Id.* Members of IP's senior executive team, including the Chief Executive Officer, Chief Financial Officer, Controller, General Counsel and Secretary, and Senior Vice President of Human Resources all work out of IP' s corporate headquarters in Memphis, Tennessee. *Id.* In addition to conducting executive meetings at IP's Memphis, Tennessee headquarters, these officers primarily perform their day-to-day job duties in Memphis, Tennessee, including controlling, directing, and coordinating the activities of IP. *Id.*

**B. <u>The Putative Class Contains More than 100 Members</u>**

14. The Complaint defines six classes:

- The **Overtime Class** consists of all "current and former non-exempt employees in California who worked more than 8.0 hours per day and/or 40.0 hours per workweek and were subject to Defendants' timekeeping policies and/or practices for non-exempt employees, during the four years immediately preceding the filing of this action." Compl. ¶ 15a.
- The **Minimum Wage Class** consists of all "current and former nonexempt employees in California who were subject to Defendants' timekeeping policies and/or practices for non-exempt employees,

during the four years immediately preceding the filing of this action through the present.” Compl. ¶ 15b.

- The **Meal Period Class** consists of all “current and former non-exempt employees in California who: (i) worked at least one shift in excess of 5.0 hours without being provided a meal period of at least 30-minutes commencing before the end of the fifth hour of work; and/or (ii) worked at least one shift in excess of 10.0 hours without being provided a second meal period of at least 30-minutes commencing before the end of the tenth hour of work, during the four years immediately preceding the filing of this action.” Compl. ¶ 15c.
- The **Rest Period Class** consists of all “current and former non-exempt employees in California who worked at least one shift in excess of 3.5 hours.” Compl. ¶ 15d.
- The **Reimbursement Class** consists of all “current and former nonexempt employees in California who were required to use their personal tools for work-related purposes without reimbursement and/or were subject to Defendants' reimbursement policies/practices, during the four years immediately preceding the filing of this action through the present. Compl. ¶ 15e.
- The **Wage Statement Class** consists of all of the “Overtime Class, Minimum Wage Class, and/or Meal Period Class who received a wage statement from Defendants during the one year immediately preceding the filing of this action through the present. Compl. ¶ 15f.

15. As such Plaintiff alleges the class period for all but the Wage Statement Class runs from June 30, 2022, to the present. By Plaintiff’s own estimation, “[t]he members of the Classes are so numerous that joinder of all members would be unfeasible and not practicable. The membership of the Classes is unknown to Plaintiff at this time; however, it is estimated that the members of

the Classes number greater than one hundred (100) individuals." Compl. ¶ 16. Indeed, at least 2,789 non-exempt employees worked for IP in California from June 30, 2022, to the present. Braslow Decl. ¶ 4. Accordingly, there are well over 100 alleged class members.

**C. The Amount in Controversy Exceeds $5,000,000**

16. Although IP denies that Plaintiff or any putative class member is entitled to any relief, in determining the amount in controversy, the Court must assume the allegations in the complaint are true and that a jury will return a verdict for the Plaintiff on all claims in the complaint. *See Cain v. Hartford Life & Acc. Ins.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." (internal quotation marks omitted)). Further, the Supreme Court instructs that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and does not require evidentiary submissions. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014); see also *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

17. As pled the alleged amount in controversy in this putative class action well exceeds $5,000,000 in aggregate, exclusive of interests and costs. The Complaint seeks: (1) unpaid overtime and related civil penalties; (2) unpaid minimum wages, liquidated damages, and related statutory and civil penalties; (3) meal period premium compensation and related statutory and civil penalties; (4) rest period premium compensation and related statutory and civil penalties; (5) compensatory damages for IP's alleged failure to reimburse for necessary business expenses; (6) penalties for wage statement violations pursuant to Labor Code section 226; (7) restitution for violation of the California Business and Professions Code; and (8) attorneys' fees. *See* Compl. ¶¶ 26, 31, 32, 35, and 39; *see also* Compl. Prayer, at 14-15.

18. Unpaid Minimum Wages. **$832,800**. Plaintiff's second cause of action alleges that IP failed to pay employees for all hours worked because Plaintiff sometimes had to wait in line for 2 minutes before he could clock in and because Plaintiff sometimes had to wait in line at a gate to get into the parking lot. Compl. ¶ 10. During the class period defined by Plaintiff, at least 2,789 non-exempt employees worked directly for IP in California. Braslow Decl., ¶ 4. These employees worked a combined total of over 347,000 work weeks. *Id*. Plaintiff does not specify exactly how often he and other class members would have to wait to clock in or how often and how long he and other class members would have to wait at the gate of the parking lot. However, estimating just two minutes per day of off the clock work, assuming three days per week waiting two minutes to clock in and two days per week waiting two minutes to get into the parking lot, Plaintiff is alleging each putative class member is owed 10-minutes of pay per workweek. The minimum wage in California when the Minimum Wage Class Period is alleged to have started (June 2022) was $15.00 per hour.[2]

19. Using the lowest minimum wage rate for the class period ($15.00 per hour), and not accounting for other sums put at issue in Plaintiff's second cause of action, including penalties and liquidated damages, Plaintiff has still put at issue $832,800.00 [347,000 workweeks * 0.16 hours per workweek * $15.00 per hour]. Thus, Plaintiff's claim for unpaid minimum wages alone puts at least $832,800.00 at issue.

20. **Unpaid Meal and Rest Period Premiums**. **$20,820,000**. Plaintiff's third cause of action alleges that IP failed to provide Plaintiff and other non-exempt employees with all legally compliant meal periods and did not pay all meal period

[2] On January 1, 2023, the minimum wage rose to $15.50 per hour for employers of 26 employees or more. On January 1, 2024, the minimum wage rose to $16.00 per hour for all employers. On January 1, 2025, the minimum wage rose to $16.50 per hour for all employers. On January 1, 2026, the minimum wage rose to $16.90 per hour for all employers.

premiums owed for each non-compliant meal period. Compl. ¶ 11. Plaintiff does not allege the specific frequency of meal period violations and/or unpaid meal period premiums. However, taking the lowest wage for the Meal Period Class period as defined by Plaintiff ($15.00 per hour), and assuming that each putative class member had one workday per workweek in which his or her meal period was unlawful, Plaintiff has put at issue an additional $5,205,000.00 [347,000 total workweeks * 1 unlawful meal period per workweek * $15.00/hour].

21. Plaintiff's fourth cause of action alleges that IP failed to provide Plaintiff and other non-exempt employees with net 10-minute rest breaks because travel time to suitable resting areas cut into the break time. Compl. ¶ 12. Moreover, Plaintiff alleges that IP did not pay premium pay for rest period violations caused by travel time to a suitable resting facility. *Id.* As drafted, Plaintiff's allegation appears to be that he and other non-exempt employees never received compliant rest breaks or premium pay for non-compliant rest breaks. Therefore, taking the lowest wage for the Rest Period Class period ($15.00 per hour), and assuming a non-compliant rest period for each employee a conservative three days per week, Plaintiff has put at issue an additional $15,615,000.00 [347,000 total workweeks * 3 unlawful rest breaks per workweek * $15.00/hour]. Thus, Plaintiff's claim for unpaid meal and rest period premiums could reasonably total more than $20,820,000.

22. **Noncompliant Wage Statements**. **$2,044,800**. Plaintiff's sixth cause of action seeks penalties under Labor Code Section 226 for allegedly inaccurate wage statements. Compl. ¶ 48. Plaintiff seeks penalties on behalf of himself and the Wage Statement Class, which authorizes a penalty of $50 per employee for each initial violation, and $100 per employee for each subsequent violation, up to a maximum of $4,000 per employee. Cal. Lab. Code § 226. Labor Code section 226 has a one-year statute of limitations, which Plaintiff recognizes in his Wage Statement Class definition. Cal. Code of Civ. Proc. § 340; Compl. ¶ 15 f. At least

2,104 individuals received a paycheck during the Wage Statement Class period, June 30, 2025, to the present, and worked at least 21,500 pay periods during that same period. See Braslow Decl., ¶ 4. As such, each would be subject to Plaintiff's § 226 claims. Accordingly, Plaintiff has put at issue at least $2,044,800 [(2,104 pay periods * $50) + ((21,500 pay periods – (1 pay period * 2,104 employees)) x $100)] in Labor Code 226 penalties alone.

23. Plaintiff has put far more than $5,000,000 at issue in the Complaint. Taking only four of Plaintiff's causes of action into account and completely disregarding Plaintiff's claims for penalties, liquidated damages, and attorneys' fees, the CAFA threshold is exceeded. Assuming Plaintiff was alleging only 10 minutes of off-the-clock work per week, one unlawful meal period per week, three unlawful rest breaks per week, and non-compliant wage statements, all at the *lowest* possible rate, Plaintiff still places over $23,697,600.00 at issue, as demonstrated in the table below:

| | |
|---|---|
| Unpaid Wages (0.1 hour/wk.) | $832,800.00 |
| Unpaid Meal (1/wk) and Rest Period (3/wk.) Premiums | $20,820,000.00 |
| Labor Code § 226 Penalties | $2,044,800.00 |
| **TOTAL** | **$23,697,600.00** |

24. Moreover, these numbers do not account for attorneys' fees, which are properly considered when determining the amount in controversy. *See Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 200-202 (1933) (attorneys' fees may be taken into account to determine jurisdictional amount where statute authorizes prevailing party attorney fees); *see also* Cal. Lab. Code §§ 218.5, 226(e)(1) (providing for attorney fees for a prevailing plaintiff on claims for wages and improper wage statements).

25. "[T]he Ninth Circuit has established 25% of the common fund as a benchmark award for attorney fees." *Giannini v. Northwestern Mut. Life Ins. Co.*, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012); *Hanlon v. Chrysler Corp.*, 150

F.3d 1011, 1029 (9th Cir. 1998). Accordingly, "it is not unreasonable [ ] to rely on this estimate using the common fund method" for removal. *Giannini* 2012 WL 1535196, at *4. Based on the sums provided above (although the amount in controversy would also include Plaintiff's other causes of action), IP could be liable for $5,924,400.00 in attorneys' fees alone.

**D. The Named Defendant is Not a Government Entity**

26. IP is not a state, a state official, or any other governmental entity.

## V. BASIS FOR FEDERAL QUESTION JURISDICTION UNDER THE LABOR MANAGEMENT RELATIONS ACT

27. This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. section 1331 and removal is proper under 28 U.S.C. sections 1441 and 1446, in that it is a civil action that raises issues which directly implicate questions of federal law under Section 301 of the Labor Management Relations Act, 29 U.S.C. section 185, et seq. ("LMRA") and the National Labor Relations Act 29 U.S.C. sections 151-169 ("NLRA").

28. The LMRA, which is codified at Title 29 U.S.C. sections 141-187, provides in Section 301 that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce…may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. §185(a). Section 301 applies "beyond cases specifically alleging contract violation to those whose resolution is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (en banc) (internal citations omitted); *see also Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748 (9th Cir. 1993) (Section 301 preempts a state law claim "if the resolution of [that] claim depends upon the meaning of a collective-bargaining agreement."). Essentially, Section 301

preempts "state law claims grounded in the provisions of a CBA or requiring interpretation of a CBA." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016).

29. Plaintiff's alleged theories in the Complaint are preempted by Section 301 of the LMRA because the resolution of the claims asserted on behalf of the alleged putative class will require interpretation of multiple collective bargaining agreements ("CBAs") effective during the putative Class Period. The CBAs in effect at the Carson location alone (where Plaintiff worked during the putative Class Period) include two CBAs between IP and General Teamsters, Airline, Aerospace and Allied Employees, Warehouseman, Drivers, Construction, Rock and Sand Local 986 (referred to hereinafter as "General Teamsters CBAs"). See Braslow Decl. at ¶ 7.

30. The General Teamsters CBAs will require this Court's interpretation to resolve Plaintiff's claims. For example, Plaintiff's overtime and minimum wage claims will require interpretation of the following provision from Section 8, in both of the CBAs applicable to the Carson facility where Plaintiff worked:

> An employee, covered by this agreement, shall be paid the rate of pay for the work classification to which he is assigned. In the event of his being temporarily assigned to a higher work classification, he shall be paid at the higher rate of pay as follows:
>
> 1. For less than four hours – paid actual hours worked.
> 2. For four hours or more – the higher rate for all work performed that day, but not less than eight hours.
> 3. Any employee temporarily working in a lower-rated classification shall receive his regular rate of pay for all such lower-rated work performed.

Braslow Decl. ¶ 7, Exhibit A at p. 8 and Exhibit B at p. 8.

31. Moreover, Plaintiff's claims are preempted by the LMRA because

Plaintiff asserts a cause of action for unpaid overtime which does not apply to employees working under qualifying CBAs. *See Curtis v. Irwin Industries, Inc.* 913 F.3d 1146, 1150 (2019) (citing Cal. Lab. Code §514) ("[T]he default definition of overtime and overtime rates…does not apply to an employee who is subject to a qualifying CBA. If [Plaintiff's] CBAs in this case meet the requirements of section 514, [Plaintiff's] right to overtime exists solely as a result of the CBA and therefore is preempted under § 301." (internal quotation marks omitted)). The alleged putative class members' entitlement to overtime compensation is not grounded in state law for employees covered by the CBAs; rather, their overtime earnings are dictated by the terms and conditions collectively bargained for in the CBAs.

32. Under California Labor Code section 514, California overtime provisions do not apply to an employee who is subject to a qualifying CBA. Here the General Teamsters CBAs have specific sections for "Wages and Hours Worked" and "Overtime." Braslow Decl. ¶ 7 Exhibit A §§ 8 and 10 and Exhibit B §§ 8 and 10.

33. To the extent that Plaintiff has not specifically pled that his claims require interpretation of the General Teamsters CBAs, he attempts to "artfully plead" his claim. This is improper and cannot avoid Section 301 preemption. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987).

34. Accordingly, this Court has original jurisdiction over Plaintiff's minimum wage and overtime causes of action in the Complaint.

## VI. SUPPLEMENTAL JURISDICTION

35. Pursuant to 28 U.S.C. §§ 1367(a) and 1441(c), this Court has supplemental jurisdiction over each of Plaintiff's additional causes of action under California law because each arises from the same nucleus of operative facts (i.e., the same transactions or occurrences); namely, Plaintiff's employment with IP. Indeed, each of Plaintiff's claims grouped together under Plaintiff's causes of action arise from, and form part of, the same case or controversy as Plaintiff's class

claims for which this Court has original jurisdiction under the CAFA. *See, e.g., United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (holding that, absent unusual circumstances, where claims based on federal law have a "common nucleus of operative fact" with those alleged under state law, federal courts should exercise supplemental jurisdiction over the state law claims); *see Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1070 (9th Cir. 2019) (citing *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1288 (9th Cir. 2013) (holding that "supplemental jurisdiction [is] proper under 28 U.S.C. § 1367(a) where claims arise from a "common nucleus of operative facts")); *see also Sea-Land Serv., Inc. v. Lozen Int'l*, 285 F.3d 808, 814 (9th Cir. 2002) ("Because the federal and state counterclaims arise from the same transaction and rely on identical facts for their resolution, they 'form part of the same case or controversy under Article III' for the purposes of supplemental jurisdiction [under 28 U.S.C. § 1367(a)]."); *Navarro v. City of* Fontana, Case No. EDCV091525VAPDTBX) 2010 WL 11459998, at *2 (C.D. Cal., Jan. 6, 2010) ("It would be inefficient to require the California Superior Court to duplicate the work of this Court by becoming familiar with these same facts. Furthermore, the existence of two separate actions relating to the same nucleus of facts would present a risk of inconsistent rulings. Additionally, it would be inconvenient to all parties to be forced to litigate two separate actions relating to the same nucleus of facts.").

## VII. NOTICE PROVIDED TO STATE COURT AND PLAINTIFF

36. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the Los Angeles County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

37. Written notice of this Notice of Removal in the United States District Court for the Central District of California will be served on Plaintiff's counsel of

record at Haines Law Group, APC. A copy of the Notice to Adverse Party of Removal of Action to Federal Court is attached hereto as **Exhibit C** (without exhibits because the exhibit is this Notice). In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court in the Superior Court for the State of California, County of Los Angeles. A copy of the Notice to State Court of Removal of Action to Federal Court is attached hereto as **Exhibit D** (without exhibits because the exhibit is the Notice).

## VIII. CONCLUSION

38. Based on the foregoing, Defendant hereby removes the above-captioned action from the Los Angeles County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446, and 1453), federal question jurisdiction (29 U.S.C. §§ 185 et seq.; 29 U.S.C. §§ 151-169), and supplemental jurisdiction (28 U.S.C. §§ 1367(a) and 1441(c)), and respectfully requests that this Court retain jurisdiction for all further proceedings.

Dated: August 20, 2026

Respectfully submitted,

**FISHER & PHILLIPS LLP**

By: */s/ Julia F. Drury*
Aaron F. Olsen
Julia F. Drury
Attorneys for Defendant
INTERNATIONAL PAPER COMPANY

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and not a party to the within action. I am employed with the law offices of Fisher & Phillips LLP and its business address is 4747 Executive Drive, Suite 1000, San Diego, California 92121.

On the below date, I served the following document entitled **DEFENDANT INTERNATIONAL PAPER COMPANY'S NOTICE AND PETITION OF REMOVAL OF ACTION** on all the appearing and/or interested parties in this action as follows:

HAINES LAW GROUP, APC
Paul K. Haines (SBN 248226)
Sean M. Blakely (SBN 264384)
Liam A. Hall (SBN 358204)
2155 Campus Drive, Suite 180
El Segundo, California 90245

Telephone: (424) 292-2350
Facsimile: (424) 292-2355
E-Mail: phaines@haineslawgroup.com; sblakely@haineslawgroup.com; lhall@haineslawgroup.com

*Attorneys for Plaintiff, Enrique A. Perez*

☒ **[by MAIL]** – I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice the enclosed document(s) will be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Diego, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

I declare that I am employed in the office of a member of the State of California at whose direction the service was made. Executed on August 20, 2026, at San Diego, California.

Lisa St. Lawrence

Lisa St. Lawrence